**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

| | |
|---|---|
| T. ROWE PRICE ASSOCIATES, INC.,<br>1307 Point Street,<br>Baltimore, MD 21231,<br><br>Plaintiff,<br><br>v.<br><br>BROADCOM INC.,<br>3421 Hillview Avenue,<br>Palo Alto, California 94304,<br><br>and<br><br>CA, INC.,<br>3421 Hillview Avenue,<br>Palo Alto, California 94304,<br><br>Defendants. | Case No. _______________<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

Plaintiff T. Rowe Price Associates, Inc. ("TRP") hereby files this Complaint against Defendants Broadcom Inc. and its wholly owned subsidiary CA, Inc. ("CA" and together with Broadcom Inc., "Broadcom" or "Defendants"), alleging breach of contract and seeking equitable relief pending the outcome of the parties' contractual dispute in arbitration.

## INTRODUCTION

1. This case arises from Broadcom's refusal to honor its contractual obligations under the terms of certain software licenses held by TRP, and its bad-faith effort instead to force TRP to purchase expensive subscriptions and products that it does not want or need—at usuriously increased rates. Pursuant to the terms of the applicable agreements, TRP holds fully paid-up

perpetual licenses to business-critical software known as Autosys and JAWS (the "Software"), along with an express contractual right to receive and reinstate maintenance for that Software. Nonetheless, Broadcom has ignored these contractual rights and sought to destroy the benefit of TRP's bargain—informing TRP that, after December 30, 2026, it can no longer use the current versions of the Software pursuant to its perpetual licenses and instead must revert to older, defunct versions of the Software for which maintenance is unavailable (without any contractual basis for its position). Forcing TRP to revert to prior versions of the Software, or to operate the Software without ongoing maintenance, would render the Software useless to TRP, destroying the value of the perpetual licenses, in breach of the parties' agreement.

2. Broadcom's refusal to honor TRP's contractual rights comes just weeks before TRP's broader subscription license for a suite of products, which includes Autosys and JAWS along with many others, expires at the end of 2026. The relevant contractual documents require Broadcom to negotiate a renewal of such subscription in good faith. Instead, Broadcom has demanded a subscription fee at a drastically higher rate than what TRP was paying previously. Rather than capitulate to that outrageous demand, TRP made the decision to terminate its subscription license, but continues to hold rights under perpetual licenses for two products, Autosys and JAWS, that TRP relies on as key components of its technology infrastructure.

3. Rather than negotiate in good faith, Broadcom has threatened TRP with an impossible choice: (i) revert to defunct versions of the Software with no maintenance support and assume the risk of significant disruption to TRP's business operations; or (ii) accept proposals that would cost TRP many multiples more than what it otherwise would have had to pay to continue using the Software with maintenance under its perpetual licenses for Autosys and JAWS.

4. When TRP last purchased the broader subscription license, Broadcom had increased the price of that subscription by significantly less than it proposes now.

5. Broadcom takes this position after acquiring CA, the Software's original licensor, as part of a broader acquisition strategy that has diminished competition in the market for this type of software and given Broadcom unfair leverage to extract inordinate price increases from customers at renewal. Broadcom's bad-faith tactics are well known across the industry and have drawn lawsuits from numerous other customers, including major healthcare, technology, and financial institutions.

6. TRP's contractual rights regarding the Software arise from a master agreement between TRP and Broadcom. That agreement contains an arbitration clause, by which the parties agreed "that any controversy or claim arising out of or relating to this Agreement, or the breach thereof, shall be submitted to and decided by arbitration[.]" Pursuant to this clause, TRP has submitted claims arising from its dispute with Broadcom to arbitration and now brings this action in this Court to seek "a temporary injunction, specific performance, and/or other equitable relief" in aid of arbitration, as expressly permitted by the master agreement. TRP seeks, among other injunctive relief, a preliminary injunction to maintain the status quo pending resolution of the contractual dispute in the arbitration.

7. Specifically, TRP seeks an order (i) entering a preliminary injunction that prevents Broadcom from terminating or otherwise interfering with TRP's perpetual licenses to the Software and maintenance rights; (ii) compelling Broadcom's specific performance of the contract, which requires Broadcom to provide maintenance for the Software in exchange for the applicable fee, which TRP has offered to pay; and (iii) permanently enjoining Broadcom from terminating or

interfering with TRP's perpetual licenses, or otherwise engaging in any retaliatory conduct against TRP.

## THE PARTIES

8. Plaintiff TRP is incorporated in Maryland with its principal place of business in Baltimore, Maryland. TRP is a wholly owned subsidiary of T. Rowe Price Group, Inc., which is a publicly held corporation incorporated in Maryland with its principal place of business in Baltimore, Maryland.

9. Upon information and belief, Defendant CA is incorporated in Delaware, with its principal place of business at 3421 Hillview Avenue, Palo Alto, California 94304. Upon information and belief, CA is a wholly owned subsidiary of Broadcom Inc. and TRP's counterparty under the CA Master Agreement (the "Master Agreement") and the order forms executed pursuant to it (the "Order Forms," and together with the Master Agreement, the "Governing Contracts").

10. Upon information and belief, Defendant Broadcom Inc. is a Delaware corporation with its principal place of business at 3421 Hillview Avenue, Palo Alto, California 94304. Upon information and belief, Broadcom Inc. acquired CA in or around November 2018 and is the successor-in-interest to CA in relation to the Master Agreement and the relevant Order Forms or exerts effective control over the decision-making of CA in relation to the Master Agreement, the relevant Order Forms, and the Software.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over TRP's claims pursuant to 28 U.S.C. § 1332 because there is complete diversity between TRP and Defendants and because the amount in controversy exceeds $75,000.

12. This Court has personal jurisdiction over Defendants pursuant to Md. Code Ann., Cts. & Jud. Proc. § 6-103 and the Due Process Clause of the Fifth Amendment to the United States

Constitution because Defendants have transacted business in this State, have contracted to supply goods and services in this State, derive substantial revenue from goods consumed and services rendered in this State, and have engaged in conduct which they reasonably should have expected to have consequences in this State.

13. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Defendants are subject to the Court's personal jurisdiction with respect to this action and thus reside in this judicial district pursuant to 28 U.S.C. § 1391(c)(2). Venue is also proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district.

14. This Court also has personal jurisdiction over Defendants and venue is proper because both parties consented to this jurisdiction and venue in the Master Agreement.

15. This action is also properly before this Court pursuant to the arbitration provision of the Master Agreement, which provides that "either party may seek an order from the appropriate state court or federal court granting a temporary injunction, specific performance and/or equitable relief either prior to or after the commencement of arbitration proceedings." Arbitration proceedings have already commenced under the administration of the American Arbitration Association.

## FACTUAL BACKGROUND

### *A. TRP Depends on the Software to Run Its Business.*

16. TRP is an investment management firm with roughly $1.83 trillion in assets under management, serving individuals and institutional investors in over 50 countries across the globe.

17. TRP purchased business-critical software from CA known as "workload-automation" software. Workload-automation software acts as the air traffic controller for a company's computer systems: it schedules, launches, sequences, and monitors background

computing tasks—or “jobs”—and keeps them running in a particular order to ensure that core business applications can run smoothly at scale.

18. TRP relies upon two interrelated workload-automation solutions: Autosys and TermaUNIFY (JAWS) (“JAWS”). TRP uses Autosys for “batch processing,” a feature that enables TRP to automate a variety of key business tasks, such as daily fund pricing and trade reconciliations. Meanwhile, JAWS functions as an essential oversight tool that monitors other automated processing, identifies and predicts issues, and traces root causes to diagnose and resolve any outages.

***B. TRP Secures Perpetual Licenses to the Software and the Right to Reinstate Maintenance Pursuant to the Master Agreement and Order Forms.***

19. TRP and CA executed the Master Agreement.

20. Section 1 of the Master Agreement recognizes two kinds of licenses: (i) a perpetual license, which may only be terminated pursuant to specific provisions of Section 11; and (ii) a subscription license, which runs for a fixed term, after which the licensee must stop using the software.

21. Section 11 addresses termination of the Master Agreement generally and only addresses the termination of perpetual licenses in Section 11(d), which provides that CA may revoke TRP’s perpetual licenses where CA terminates the Master Agreement for cause as a result of TRP’s breach of certain obligations. TRP has not breached these specified obligations, and CA has never terminated the Master Agreement, which automatically renews annually pursuant to Section 11(a).

22. Section 11(e) establishes a procedure through which TRP may reinstate maintenance in support of generally available software that has been licensed upon TRP’s payment of a maintenance fee.

23. Pursuant to the Master Agreement, TRP and CA entered into various agreements known as "Order Forms" regarding the purchase of the Software and other technology solutions.

24. Under the terms of the Order Forms, TRP purchased a perpetual license to Autosys, without limitation to any particular version, and extended support.

25. In November 2018, Broadcom Inc. acquired CA.

26. Several years later, TRP and Broadcom executed an Order Form regarding the Software and other CA technology solutions. This Order Form introduced a subscription license model but expressly preserved TRP's perpetual licenses for Autosys and JAWS and provided that such licenses would continue to be valid licenses subject to the Governing Contracts.

27. Once this Order Form expired, TRP and Broadcom executed another Order Form, which again included an agreement for a subscription license to various products for a term of years that ends on December 30, 2026, and again expressly preserved TRP's perpetual licenses for Autosys and JAWS.

28. While such perpetual licenses were preserved, Autosys and JAWS were separately and expressly itemized under the subscription license, meaning that TRP would not need to separately pay for ongoing maintenance, because such maintenance was included within the broader subscription package. Consistent with the prior Order Form, this Order Form again recognized that TRP had valid and existing perpetual licenses for products including Autosys.

29. This Order Form separately recognized that TRP holds a perpetual license to JAWS for a set number of jobs.

30. The parties also agreed that, before the end of 2026, they would begin negotiations in good faith to address any fees for any increase in price and costs associated with any extensions of the subscription license.

### *C. Broadcom Refuses to Negotiate an Extension in Good Faith.*

31. On October 20, 2026, TRP met with Broadcom to negotiate a reasonable extension of the Software subscription for one to three years, during which TRP made an initial proposal for renewal based on a more limited suite of products. During that discussion, Broadcom's representative stated that Broadcom was "not like other companies," and that it likely would not accept TRP's initial proposal.

32. Upon information and belief, a senior Broadcom executive rejected TRP's proposal because it did not seek the purchase of additional Broadcom products unrelated to the Software. The senior Broadcom executive also based the rejection of TRP's proposal on his belief that TRP had shifted away from Broadcom and to competitors for various other technology products. The executive further threatened that, as a result, elevating TRP's proposal to Broadcom's executive leadership team would "bring TRPs [sic] ongoing relationship erosion into sharp focus, which will not yield a favorable outcome"—a clear attempt to intimidate TRP.

33. Broadcom then provided TRP with a written proposal that would have required TRP to pay many multiples more than it otherwise would be contractually required to pay to continue using the Software with maintenance or to, alternatively, purchase many products that TRP does not want or need.

34. Broadcom's proposed terms cannot be squared with good-faith engagement. By comparison, when TRP last renewed its subscription license, Broadcom had increased the price of that subscription by significantly less than it proposes now.

35. A week later, Broadcom confirmed that it was not operating in good faith when it escalated its pressure tactics. Citing no contractual provision, the senior Broadcom executive told his TRP counterparts that TRP's perpetual licenses only applied to outdated and defunct versions

of the Software, and demanded that TRP uninstall the current releases it received and paid for under the most recent Order Form.

36. Notwithstanding this baseless demand, the senior Broadcom executive threatened that TRP's reversion to the older versions of the Software could disrupt TRP's operating environment and have adverse consequences for its business.

***D. TRP Asserts Its Perpetual Rights, and Broadcom Rejects Them.***

37. On October 30, 2026, TRP notified Broadcom that it would not renew the subscription licenses, "except in relation to TRP's perpetual rights, which shall continue in force" after December 30, 2026.

38. Broadcom responded on November 11, 2026 ("November 11 Letter"), stating unequivocally that, as of December 30, 2026, TRP "will have no maintenance entitlement" for any offering in the most recent Order Form and must revert to earlier versions of the Software by uninstalling current Autosys and JAWS components. Broadcom threatened that any continued use "will constitute a material breach of contract and copyright infringement."

39. Broadcom's conduct follows a familiar pattern: acquire key suppliers of enterprise software; disregard those suppliers' contractual obligations; and leverage their customers' dependency on such software to extort them into accepting unfavorable contractual terms or making exorbitant price concessions.

40. TRP responded on November 24, 2026, invoking its right under Section 11(e) to reinstate maintenance and offering in good faith to pay the required maintenance fee, notwithstanding Broadcom's blanket refusal. Broadcom has not agreed to provide maintenance on the terms Section 11(e) requires, nor has it made a counteroffer regarding the amount of the maintenance fee.

## CAUSES OF ACTION

### COUNT I
### (Breach of Contract)

41. TRP realleges and incorporates by reference each and every allegation contained in Paragraphs 1 through 40 as if fully set forth herein.

42. The Governing Contracts are valid, enforceable, and binding on Broadcom.

43. Under Maryland law, a claimant "must simply show that 'the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation.'" *WSC/2005 LLC v. Trio Ventures Assocs.*, 190 A.3d 255, 265 (Md. 2018) (quoting *Taylor v. NationsBank, N.A.*, 776 A.2d 645, 651 (Md. 2001)). A breach of contract can also be established by the anticipatory repudiation of a contract where there exists "a definite, specific, positive, and unconditional repudiation of the contract by one of the parties to the contract." *C. W. Blomquist & Co., Inc. v. Cap. Area Realty Inv'rs*, 311 A.2d 787, 791 (Md. 1973).

44. Broadcom has breached the Governing Contracts in the following respects:

a. *Perpetual licenses.* The Governing Contracts grant perpetual licenses to the Software that may be terminated only for cause under Section 11 of the Master Agreement, and CA affirmed, through the Order Forms, that they would continue into perpetuity. Through the November 11 Letter, Broadcom anticipatorily repudiated, and therefore breached, the Governing Contracts by refusing to honor these perpetual licenses after December 30, 2026.

b. *Maintenance reinstatement.* Section 11(e) of the Master Agreement entitles TRP to reinstate maintenance by paying the contractually required fee while CA makes such maintenance generally available. Maintenance for the Software remains generally available; indeed, it is currently available to TRP under the terms of the most recent Order

Form. TRP offered to tender the maintenance fee, notwithstanding Broadcom's anticipatory repudiation of its maintenance obligations.

c. *Good-faith negotiation.* Per the most recent Order Form, the parties must begin negotiations in good faith over extension fees. Maryland enforces promises to negotiate in good faith. *See, e.g.*, *Cochran v. Norkunas*, 919 A.2d 700, 706 n.5 (Md. 2007). After announcing there would be no movement in negotiations, Broadcom refused any shorter term, demanded punitive pricing, conditioned reasonable pricing on bundling the Software with unrelated products, tied its position to TRP's use of competitor software, and threatened litigation. Put simply, Broadcom did not negotiate in good faith.

d. *Implied covenant of good faith and fair dealing.* Every Maryland contract includes an implied covenant that neither party will act to frustrate the other's right to receive the fruits of the contract. *See Questar Builders, Inc. v. CB Flooring, LLC*, 978 A.2d 651, 671 675 (Md. 2009) ("Maryland contract law generally implies an obligation to act in good faith and deal fairly with the other party or parties to a contract," which requires that "each party must do nothing to destroy the rights of the other party to enjoy the fruits of the contract") (cleaned up). Broadcom used its control over pricing, releases, and service offerings to strip the perpetual licenses of all value, and now proposes an unsupported contractual reading that would force TRP to use defunct software Broadcom itself describes as unsafe to run. A license that can be exercised only by forfeiting operational integrity, cybersecurity, and regulatory compliance is no license at all. *See Ocean Petroleum Co. v. Yanek*, 5 A.3d 683, 692 (Md. 2010) (courts "avoid interpreting contracts so as to nullify their express terms").

45. As a direct and proximate result of Broadcom's breaches, and assuming its mitigation efforts are unsuccessful, TRP will suffer irreparable harm, entitling it to specific performance and other equitable relief (both preliminary and permanent).

## **PRAYER FOR RELIEF**

46. WHEREFORE, TRP respectfully requests that the Court enter judgment in its favor as follows:

A. An order of preliminary injunction preventing Broadcom from terminating or otherwise interfering with TRP's perpetual licenses to the Software and maintenance rights;

B. An order of specific performance compelling Broadcom to accept TRP's Section 11(e) payment and to provide maintenance for the Software, for so long as the Master Agreement remains in effect and Broadcom makes such maintenance generally available;

C. An order permanently enjoining Broadcom from terminating or interfering with TRP's perpetual licenses, except as provided in Section 11(d) of the Master Agreement, or otherwise engaging in any retaliatory conduct against TRP; and

D. Such other equitable relief as may be just and proper.

## **JURY DEMAND**

47. TRP requests a jury trial in this matter.

Dated: November 24, 2026

Respectfully submitted,

*/s/ Mark S. Saudek*
Mark S. Saudek (Fed. Bar No. 23963)
**GALLAGHER LLP**
650 S. Exeter Street, Suite 1200
Baltimore, MD 21202
Tel: (410) 727-7702
msaudek@gallagherllp.com

Daniel V. Ward (*pro hac vice forthcoming*)
Joshua S. Levy (*pro hac vice forthcoming*)
Amy D. Roy (*pro hac vice forthcoming*)
Sandra H. Masselink (*pro hac vice forthcoming*)
Neema Hakim (*pro hac vice forthcoming*)
**ROPES & GRAY LLP**
Prudential Tower
800 Boylston Street
Boston, MA 02199-3600
Tel: (617) 951-7000
Daniel.Ward@ropesgray.com
Joshua.Levy@ropesgray.com
Amy.Roy@ropesgray.com
Sandra.Masselink@ropesgray.com
Neema.Hakim@ropesgray.com

*Counsel for T. Rowe Price Associates, Inc.*